**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, ET AL.,

    Plaintiffs,

vs.

ELECTROLUX HOME PRODUCTS, INC.,

    Defendant.

Case No. 3:11-CV-00678(SLC)

**REPLY IN SUPPORT OF DEFENDANT ELECTROLUX HOME PRODUCTS, INC.'S MOTION TO PRECLUDE TESTIMONY OF W. JOSEPH FALLOWS, MICHAEL R. STODDARD, JR., AND DR. ERIC J. BOELHOUWER**

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.  ARGUMENT ...................................................................................................... 2

    A.   Plaintiffs Have Failed To Address the Central Inquiry of Whether Mr. Fallows's Methodology Is Reliable. ....................................... 2

    B.   Plaintiffs Have Not Established That Mr. Stoddard Is Qualified To Offer His Proffered Testimony Or That His Opinions Are Reliable. ...................................................................................... 3

        1.   Even if Mr. Stoddard's Record in Surviving *Daubert* Challenges Were As Good As Plaintiffs Claim, It Would Have No Preclusive Effect. ..................................................... 3

        2.   Plaintiffs Have Not Established That Mr. Stoddard Is Qualified To Opine on Engineering, Product Design, Plastics, or Warnings. ............................................................................ 5

        3.   Plaintiffs Have Not Established That Mr. Stoddard's Opinions Are Based On A Reliable Methodology ........................... 7

    C.   Plaintiffs Have Not Met Their Burden of Showing that Dr. Boelhouwer Is Qualified To Offer His Proffered Opinions or That They Are Reliable. ............................................................................... 10

III. CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Burks v. Abbott Labs.*, 917 F. Supp. 2d 902 (D. Minn. 2013) ...................................................... 11

*Clarke v. LR Systems*, 219 F. Supp. 2d 323 (E.D.N.Y. 2002) ......................................................... 3

*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ................................... 5

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993) ................................................................................................................................ passim

*Donegal Mut. Ins. Co. v. Electrolux N. Am.*, Case No. 1:08-CV-2171, 2012 WL 3022721 (M.D. Pa. July 24, 2012 ....................................................................................................................... 4, 5

*Donegal Mutual Insur. Co. a/s/o Vanessa Schantz v. Electrolux North America*, Case No. 1:08-cv-02171-YK (Dec. 22, 2010 M.D. Pa.) .......................................................................................... 4

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ...................................................................... 2, 9

*Pineda v. Ford Motor Company,* 520 F.3d 237 (3rd Cir. 2008) ...................................................... 6

*Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235 (10th Cir. 2000) ...................................................... 12

I. **INTRODUCTION**

Electrolux has raised key questions challenging Plaintiffs' experts' qualifications and methodology, to which Plaintiffs have offered no substantive response. Rather than meet Electrolux's challenges on the merits, Plaintiffs repeatedly assert that these issues have been litigated over and over again and their experts have survived every challenge, effectively rendering their testimony unassailable. In fact, however, Plaintiffs point the court to no challenges of Mr. Fallows or Dr. Boelhouwer, and only two challenges of Mr. Stoddard, one of which, contrary to Plaintiffs' assertion, was successful. Not only is this record not—contrary to Plaintiffs' repeated suggestions—*dispositive* of the challenges here, it is not even *persuasive*.

Electrolux's unanswered challenges of Plaintiffs' experts establish that their testimony does not pass muster under *Daubert*. Mr. Fallows opines that because Electrolux used plastics not treated with fire retardant, it created a fire hazard for consumers. But he has no support for his opinions because the standardized ratings on which he relies explicitly state that they do not correlate to real-world conditions. There is no link between the authority on which he relies and the real-world conditions of these cases, and hence his opinions cannot meet *Daubert*'s "fit" requirement. Plaintiffs have no meaningful response to this argument.

Plaintiffs have similarly failed to meet their burden with respect to Mr. Stoddard. In response to the challenge that his fire investigation experience does not qualify him to offer opinions on dryer design, plastics, and warnings, Plaintiffs provide a laundry list of his training and experience. Yet nearly every item listed relates to fire investigation, not the topics on which Plaintiffs would have him opine. Nor have Plaintiffs adequately addressed the flaws in his methodology, which utilizes testing of used Electrolux dryers the operational history of which is a mystery to him and new dryers that were substantially modified. Plaintiffs have no response to the arguments regarding his lack of qualifications to opine as he seeks in these matters, or that the methodological failures render his opinions fundamentally unreliable.

The same is true regarding Dr. Boelhouwer's opinions that Electrolux's warnings are inadequate. He does not rest his opinions on any relevant authority or experience. Rather he

1

makes bald conclusory assertions based on questionable assumptions about consumer behavior.

For these reasons, Electrolux respectfully requests that the Court grant its motion to exclude the testimony of Mr. Fallows, Mr. Stoddard, and Dr. Boelhouwer.

## II.     ARGUMENT

### A.     Plaintiffs Have Failed To Address the Central Inquiry of Whether Mr. Fallows's Methodology Is Reliable.

As explained in detail in Electrolux's brief, Mr. Fallows's opinion that Electrolux should not have used non-fire-retardant plastics for its dryer components is unreliable because it is based on standardized fire ratings derived from laboratory testing that has no relevance to the real-world conditions of these cases. *See* Electrolux Br. (Dkt. 128) Section A. Because there is nothing connecting Mr. Fallows's opinion evidence to the existing data but Mr. Fallows's say-so, his testimony is inadmissible. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Plaintiffs have no meaningful response to this argument. According to Plaintiffs, Mr. Fallows's testimony meets the relevancy test because he will opine that "Electrolux violated basic engineering principles in choosing not to make a design change after testing established that a design change would create a safer product." Opp'n at 17. Yet this opinion is inadmissible precisely because Mr. Fallows has pointed to no such testing. *See* Electrolux Br. at 5-9. The UL 94 standardized fire ratings on which Mr. Fallows purportedly relies explicitly state that "[t]he performance level of a material determined by these methods shall not be assumed to correlate with its performance in end-use application." Electrolux Br. at 8 n.4. Consequently, they cannot support Mr. Fallows's leap from the fact that the plastic used by Electrolux was rated HB instead of 5V to his conclusion that Electrolux's use of that plastic created an actual fire hazard in these or any other real-world cases. Thus, there is "too great an analytical gap between the data and the opinion proffered," rendering Mr. Fallows's opinion testimony inadmissible. *Joiner*, 522 U.S. at 146 (1997).

Plaintiffs' cited authority, *Clarke v. LR Systems*, 219 F. Supp. 2d 323 (E.D.N.Y. 2002), does not support a different conclusion. As Plaintiffs note, the expert there "had identified a well-known hazard," explained the consequences of the hazard, and testified regarding an alternative design that would have prevented the hazard. *See* Opp'n at 19. Mr. Fallows, in contrast, has not identified any hazard at all, let alone a well-known one.

With respect to his ethics opinions, which he is no more qualified to offer than a lay person, Plaintiffs do nothing more than assert that Mr. Fallows found that Electrolux jeopardized consumer safety when it used HB-rated plastic and failed to meet the GE SEE fire containment requirement. *See* Opp'n at 22. Yet, as discussed above, Mr. Fallows has not established that the use of a different type of plastic would meaningfully reduce the risk of a dryer fire inherent in all clothes dryers. *See* Electrolux Br. at 11-12. The same is true with respect to Mr. Fallows's opinion that Electrolux dryers should have met the GE SEE fire containment requirement, which he could not even effectively describe. *Id*. Because these opinions are unsupported and therefore unreliable, there is no basis for admitting Mr. Fallows's derivative ethics opinions.

> **B.     Plaintiffs Have Not Established That Mr. Stoddard Is Qualified To Offer His Proffered Testimony Or That His Opinions Are Reliable.**
>
> **1.     Even if Mr. Stoddard's Record in Surviving *Daubert* Challenges Were As Good As Plaintiffs Claim, It Would Have No Preclusive Effect.**

Plaintiffs devote much of their brief to the argument that Electrolux's motion to preclude Mr. Stoddard's testimony is essentially frivolous because he has survived numerous *Daubert* challenges in other courts. This argument is meritless. Even if the rulings of other courts in other cases were relevant,[1] Plaintiffs' assertion that Electrolux's motion to exclude Mr. Stoddard's testimony here is an "attempt to re-litigate what has already been decided by the United States Judiciary," Opp'n (Dkt. 135) at 6, dramatically overstates the record they present.

---

[1] Unsurprisingly, Plaintiffs cite no authority for the incorrect suggestion that previous rulings denying motions to exclude Mr. Stoddard's testimony in other cases have any preclusive effect whatsoever in this case—nor could they. The fact that Mr. Stoddard has survived challenges to exclude his testimony in other cases in different courts involving different facts—none of which have been subjected to appellate review—does not give Mr. Stoddard carte blanche to offer whatever opinions he likes in this case.

Of the six rulings cited by Plaintiffs, *see* Pl. Exs. 1 to 6, only two actually relate to challenges to Mr. Stoddard: one in a New York federal case and another in a California state court.[2] The other four relate to challenges of other experts not designated to testify here.[3]

More importantly however, Plaintiffs mischaracterize the record on previous rulings in order to make their sweeping claim that "[n]one of Electrolux's challenges [of Mr. Stoddard and these other experts] has succeeded in barring their testimony," Opp'n at 3, and that "each and every time" it has mounted such a challenge, "Electrolux has been defeated." This is inaccurate, as Electrolux's citation to the successful challenge of Mr. Stoddard in the *Donegal* matter in Pennsylvania federal court demonstrates. *See* Electrolux Br. (Dkt. 128) at 13 (citing Electrolux Ex. 16 (Order in *Donegal Mutual Insur. Co. a/s/o Vanessa Schantz v. Electrolux North America*, Case No. 1:08-cv-02171-YK (Dec. 22, 2010 M.D. Pa.) at 7-8 (holding Mr. Stoddard not qualified to opine on design defect and warnings, only fire cause and origin)).

In response, Plaintiffs assert that "as Electrolux well knows, the Donegal decision ***no longer exists*** in its present form. Plaintiff Donegal moved for, and was granted, reconsideration of the Court's Order precluding Mr. Stoddard on FED. R. EVID. 702 reliability grounds. . . ." Opp'n at 7 n.5 (emphasis in original). This is wrong. Plaintiff Donegal moved for and was **denied** reconsideration of the order precluding Mr. Stoddard's testimony. *See Donegal Mut. Ins. Co. v. Electrolux N. Am.*, Case No. 1:08-CV-2171, 2012 WL 3022721 at *1 (M.D. Pa. July 24, 2012.[4] Thus, there is absolutely no basis for Plaintiffs' contention that Electrolux cited a

---

[2] *See* Pl. Ex. 1 (Transcript of Aug. 22, 2012 Conference re Pending Motion in *State Farm Fire & Casualty Company a/s/o Deitch v. Electrolux Home Products, Inc.*, Case No. 2:10-cv-03901-JFB-AKT, United States District Court for the Eastern District of New York), Pl. Ex. 2 (Transcript of June 13, 2012 Proceedings in *State Farm General Ins. Co. v. Electrolux Home Products, Inc.*, Case No. EC053578, Superior Court, County of Los Angeles, North Central District).

[3] *See* Pl. Ex. 3 (*State Farm Fire & Casualty a/s/o Slabach v. Electrolux Home Products, Inc.*, 2013 WL 3013531 (N.D. Ind., June 17, 2013)), Pl. Ex. 4 (Transcript of April 23, 2013 Trial Testimony of Ron Parsons in *New Jersey Mfrs. Ins. Group v. Electrolux Home Products, Inc.*, United States District Court for the District of New Jersey, Civil Action No. 10-1597), Pl. Ex. 5 (February 24, 2010 Transcript of Jury Trial in *Standard Fire Ins. Co. a/s/o Newcomb v. Electrolux Home Products, Inc.*, United States District Court for the Western District of Wisconsin, Case No. 08-cv-540-SLC (Crocker, M.J.)), Pl. Ex. 6 (*Rager v. General Electric Co.*, 2010 WL 5393857 (M.D. Pa., Dec. 22, 2010).

[4] Plaintiffs do not cite this opinion, pointing instead to the transcript from a *Daubert* hearing the court allowed after

vacation opinion, let alone for their suggestion that Electrolux knowingly attempted to mislead this Court.

### 2. Plaintiffs Have Not Established That Mr. Stoddard Is Qualified To Opine on Engineering, Product Design, Plastics, or Warnings.

Plaintiffs have failed to establish how Mr. Stoddard's expertise in fire investigation qualifies him to testify as an expert in dryer design, plastics engineering, or product warnings. *See* Opp'n at 7-12. Plaintiffs catalogue eight areas of Mr. Stoddard's education, training, and experience that supposedly qualify him to testify outside his cause-and-origin bailiwick, but four of the eight relate specifically to fire cause and origin. *See* Opp'n at 7-8 (bullets 1-3 and 7). Plaintiffs also assert that Mr. Stoddard "has attended more than sixty (60) hours of training courses and seminars specifically related to appliances and dryers," *id*. at 8 (bullet 8), but the courses listed on his CV that might be so categorized related to arson investigation and fire science, not engineering or design. *See* Electrolux Ex. 7 (Dkt. 128-8, Stoddard CV).

The remaining areas of training and experience listed by Plaintiffs include Mr. Stoddard's litigation-related examination and testing of Electrolux dryers, along with his time spent authoring reports for litigation. Countless courts, including the Ninth Circuit in *Daubert II*, have addressed the dubiousness of opinions developed solely for litigation. *Daubert v. Merrell Dow Pharm., Inc*., 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*") ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have

---

the original order excluding Mr. Stoddard's testimony was entered. *See* Opp'n at 7 n.5 (citing Pl. Ex. 7 (Transcript of Nov. 2, 2011 Proceedings In Re: *Daubert* Hearing in *Donegal Mut. Ins. Co. v. Electrolux N. Am.*, Case No. 1:08-CV-2171, United States District Court for the Middle District of Pennsylvania)). The *Donegal* plaintiff argued in its motion for reconsideration that it had never been given an opportunity to present Mr. Stoddard's testimony to the court. *See* Pl. Ex. 7 at 4-5. The Court conceded that plaintiff might have misunderstood a previous order allowing a *Daubert* "argument" rather than a *Daubert* "hearing" to mean that it would not hear Mr. Stoddard's testimony, so allowed a *Daubert* hearing where Mr. Stoddard was examined. *Id*. Plaintiffs assert that the court vacated its prior opinion when it stated that the "purpose of this hearing is to take us back where we would have been had the court said in an order there's going to be a *Daubert* hearing," *see* Opp'n at 7 n.5 (citing Pl. Ex. 7 at 5), but this is incorrect. In its opinion denying the motion for reconsideration, the *Donegal* court rejected the plaintiff's motion for reconsideration and concluded, "Plaintiff has not demonstrated grounds for altering or amending the Court's December 22, 2010 order," excluding Mr. Stoddard's opinion "that the dryer at issue defectively allowed lint to accumulate near the heat source." *Donegal*, 2012 WL 3022721 at *6.

developed their opinions expressly for purposes of testifying."). Neither Mr. Stoddard's fire investigation expertise, nor his litigation-related experience, qualifies him to offer expert testimony regarding dryer design.

Similarly, Plaintiffs have failed to show how Mr. Stoddard's training and experience as a fire investigator qualify him to offer opinions regarding the appropriateness of the particular plastics used in the subject dryers. Plaintiffs point to Mr. Stoddard's testing of those plastics, but as discussed *supra* and in Electrolux's brief, Plaintiffs have not established how that testing, which (similar to the UL 94 standards on which Mr. Fallows relies) compared different plastics exposed to flame for periods of a minute or less, is at all relevant to the real-world situations of the cases here, which involved much longer exposures to flames fed by much larger fuel sources (e.g., loads of dry clothing in the dryer drum). *See* Electrolux Br. at 18-19.

Plaintiffs fare no better with respect to Mr. Stoddard's qualifications to testify regarding warnings. Plaintiffs rely on *Pineda v. Ford Motor Company,* 520 F.3d 237 (3rd Cir. 2008), which is not controlling and is inapposite in any event. The challenged expert in *Pineda*—unlike Mr. Stoddard, a certified engineer—offered testimony that the manufacturer defendant's warning was inadequate because it failed to provide detailed, step-by-step instructions on how to replace hinges on an SUV liftgate without shattering the liftgate glass, testifying that a proper instruction was a solution to an engineering problem under the safeguarding hierarchy. *Id*. at 245. In addition to Mr. Stoddard not being a certified engineer, the crux of his offered testimony here is that consumers are unlikely to comply with the warning that the dryer should be professionally serviced every 18 months, so Electrolux should have modified the subject dryers to include service reminder lights, restricted airflow notifications, and a lockout system to shut the dryer down if the user ignores the warnings. *See* Electrolux Br. at 19-20. Plaintiffs have not met their burden of showing that Mr. Stoddard's experience as a fire investigator in any way qualifies him to testify that these proposed modifications were even feasible, let alone that they would be more effective than the warnings already accompanying Electrolux's dryers.

Plaintiffs have failed to meet their burden of showing that Mr. Stoddard is qualified under Rule 702 to offer expert opinion testimony in any area other than fire cause and origin. Accordingly, his testimony regarding design defects, Electrolux's choice of plastics, and the adequacy of Electrolux's warnings should be excluded.

### 3. Plaintiffs Have Not Established That Mr. Stoddard's Opinions Are Based On A Reliable Methodology.

Even if he were qualified to testify in these areas, Plaintiffs have failed to meet their burden of showing that Mr. Stoddard's opinions are based on an independently-verifiable, scientifically-valid methodology, as required under *Daubert* and Rule 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993) ("*Daubert I*") ("in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known").

Plaintiffs highlight that Mr. Stoddard states in his report that his investigation into the origin and cause of the fires was guided by NFPA 921: Guide for Fire and Explosion Investigations. *See* Opp'n at 8. This is meaningful only to the extent that Mr. Stoddard is offering testimony as to the cause and origin of the fires here.[5] It has no bearing on his methodology underlying his design defect, plastics, and warnings opinions.

Plaintiffs also point to the "vast amount of testing" Mr. Stoddard has conducted, but have no meaningful response to Electrolux's argument that the methodology employed by Mr. Stoddard is unsound. Plaintiffs' theory is that "Electrolux's design of [the baffle located behind the drum] permits lint to collect in extraordinary quantities around the circumference of the deflector." Opp'n at 14. In support, Plaintiffs state that "Mr. Stoddard has examined hundreds of Electrolux dryers and has documented this lint collection with photographs produced in this

---

[5] Plaintiffs have designated Messrs. Chris W. Korinek, David L. DeWolf, and Gregory St. Onge to testify on cause and origin in the Brossard, Freeman, Holt, and Kucharski, cases. To the extent that Mr. Stoddard would offer cause and origin testimony in those cases, it would be duplicate of the testimony of Plaintiffs' other cause and origin experts and should therefore be excluded.

litigation," citing Mr. Stoddard's testing of the burned and unburned exemplar dryers and his later lint accumulation testing. *Id.* (citing Electrolux Ex. 6 (Dkt. 128-7, Stoddard Rep. – Blake) at 44-48, 77-82, 130-141). But the testing of the exemplar dryers is unreliable because Mr. Stoddard is ignorant of their operational history, service history, and other factors that he admits impact the dryers' lint accumulation. *See* Electrolux Br. at 15. Because he cannot account for how those factors impacted the dryers' lint accumulation, these tests do not offer scientifically valid support for his conclusion that Electrolux's design allows for excessive lint accumulation near the dryer's heat source. Plaintiffs have no response to this criticism of Mr. Stoddard's testing methodology.

Mr. Stoddard's lint accumulation testing suffers from the same flaw. He admits in his report that this testing was performed on (1) a used Electrolux dryer and (2) two new Electrolux dryers that were modified to (of all things) remove the baffle. *See* Electrolux Ex. 6 at 128-129. Mr. Stoddard does not include in his report, nor do Plaintiffs cite, any information regarding the used dryer's operational history, service history, or other factors pertinent to the lint accumulated in the dryer at the time Mr. Stoddard commenced his testing. With respect to the new dryers, Mr. Stoddard does not include in his report, nor do Plaintiffs cite, any explanation for why the Wright Group removed the baffle in the new dryers prior to commencing their testing, or how the results of this test can be tied to the facts here given this very significant modification. Mr. Stoddard accordingly cannot attribute lint accumulation observed in these tests to the design of an unmodified, properly-maintained Electrolux dryer as opposed to the history of the used dryers or the modifications made to the new dryers. Accordingly, his lint accumulation testing does not offer scientifically-valid support for his theory that the Electrolux dryer design causes excessive accumulation of lint near the heat source.

Plaintiffs also assert that Mr. Stoddard has performed "objective examinations" of the subject dryers, "which clearly demonstrate lint accumulations near the exemplar dryers' respective heat sources." Opp'n at 13. In support, Plaintiffs cite Mr. Stoddard's Blake report at 41-48. *Id.* But Mr. Stoddard could point to no evidence of any accumulated lint in the Blake

dryer. *See* Electrolux Ex. 6 (Dkt. 128-7, Stoddard Rep. – Blake) at 13 ( "the deflector attached to the rear of the drum contained no unburned or charred lint").

With respect to his opinions regarding Electrolux's use of non-fire-retardant plastics for some components of the subject dryers, Plaintiffs have no substantive response to Electrolux's argument that Mr. Stoddard's opinion that Electrolux should not have used HB-rated plastics in the subject dryers is unreliable. Nowhere in Mr. Stoddard's report does he establish that the Wright Group's testing, which exposed plastic samples to flame for a maximum of 60 seconds, can be extrapolated to real-world dryer fires. *See* Electrolux Br. at 18. As with Mr. Fallows, there is nothing connecting Mr. Stoddard's opinion evidence to the existing data but Mr. Stoddard's fiat, so his testimony is inadmissible. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (opinion evidence connected to data only by expert's *ipse dixit* inadmissible). Plaintiffs only response to this argument is that "Electrolux has not yet even provided Mr. Stoddard the opportunity to testify regarding his most recent testing." Opp'n at 10.[6] There is nothing, however, precluding Plaintiffs from offering such testimony in an affidavit in support of their opposition to Electrolux's motion. Presumably, if Mr. Stoddard could provide testimony supporting this opinion, Plaintiffs would have submitted it in an affidavit to that effect.[7]

---

[6] Plaintiffs are presumably referring to the Wright Group's testing related to the UL 2158 Fire Containment standard, which Plaintiffs' experts concede was not effective until 2013. *See* Electrolux Br. at 17 n.6. It is accordingly irrelevant to these cases. *Id.*

[7] Plaintiffs characterize as "extraordinary" Electrolux's filing of a motion to exclude Mr. Stoddard's testimony before he has been deposed in this case. Opp'n at 6. Electrolux recently changed counsel in these matters, engaging the undersigned Tucker Ellis LLP, who requested dates for the depositions of Mr. Stoddard, Mr. Fallows, and Dr. Boelhouwer immediately after its engagement. The latter two were available before Electrolux's motion was due, but Mr. Stoddard, unfortunately, was not. As Electrolux noted in its brief, *see* Electrolux Br. at 14 n.6, rather than delay this proceeding, it chose to file its motion without seeking a continuance, reserving its right to seek leave to supplement should the need arise after Mr. Stoddard's deposition, which is currently scheduled for May 22 and 23, 2014. In any event, courts have granted *Daubert* motions where, as here, the moving party had not deposed the expert in that case. *See, e.g.*, *Moore v. Weinstein Co., LLC*, 2012 WL 1884758 at *3-7 (M.D. Tenn. May 23, 2012) (granting motions to exclude testimony on basis of expert reports where experts had not yet been deposed). And Plaintiffs' authority, *Cont'l Motors, Inc. v. Jewell Aircraft, Inc.*, CIV.A. 12-0221-WS-C, 2013 WL 5530842 (S.D. Ala. Oct. 4, 2013), is distinguishable. Unlike here, Jewell Aircraft had not previously deposed the challenged expert, *see generally id.*, so had never had an opportunity to explore basic areas of the expert's qualification and opinions, which were not included in his report. *Id.* at *8. Electrolux has deposed Mr. Stoddard on numerous occasions, and his reports, each at approximately 150 pages, are sufficiently detailed to allow the Court to evaluate the methodology underlying his opinions in those few subjects on which he has not previously been deposed.

Plaintiffs' response regarding Mr. Stoddard's opinions on Electrolux's warnings is also unavailing. Plaintiffs try to reframe Mr. Stoddard's proffered testimony regarding warnings as merely an opinion regarding "the impropriety of Electrolux's use of product literature as a solution to a product design hazard." Opp'n at 11. But Mr. Stoddard's warnings opinions go much further. As noted *supra*, he opines that consumers are unlikely to heed a written warning that the dryer should be professionally serviced every 18 months, so Electrolux should have implemented his theoretical warning/lockout system. *See* Electrolux Br. at 19-20. Plaintiffs have offered no substantive response to Electrolux's argument that these opinions are nothing but rank speculation, wholly unsupported by any data, testing, or analysis. *See generally* Opp'n.

Plaintiffs have not provided a substantive response to Electrolux's criticisms of the methodology Mr. Stoddard employed in reaching his opinions regarding Electrolux's design, use of components made of specific plastics, and warnings. Accordingly, his testimony on these subjects should be excluded in its entirety.

### C. Plaintiffs Have Not Met Their Burden of Showing that Dr. Boelhouwer Is Qualified To Offer His Proffered Opinions or That They Are Reliable.

Plaintiffs have failed to provide any substantive response to Electrolux's arguments for excluding the testimony of Dr. Boelhouwer. Instead, they refer the Court to the credentials of Dr. Boelhouwer's colleague, Dr. Alan Dorris (who will not be testifying here), make generalized arguments about the admissibility of human factor testimony, and cite opinions from other jurisdictions that are not controlling, and do nothing to advance Plaintiffs' argument that Dr. Boelhouwer's testimony is admissible in any event. The fact that other courts have admitted human factors testimony offered by Dr. Boelhouwer's colleague and other experts in unrelated cases does not give Dr. Boelhouwer a blank check to offer unsupported opinions in the cases here, on subjects far afield from his actual expertise.

Electrolux takes issue with Dr. Boelhouwer's opinions because they are implausible, internally inconsistent, and unsupported by any authority. Dr. Boelhouwer opines, for instance, that no written warning that a dryer should be serviced every 18 months could ever be adequate

because the cost of compliance is too high.  *See* Electrolux Br. at 21.  Yet he offers no scientifically-valid support for his questionable contention that consumers will never comply with a warning that a major appliance such as a dryer should be professionally serviced at regular intervals, even if they are not experiencing operational issues.  He points only to an anecdotal CPSC survey stating that consumers "may" overlook performing routine maintenance until there is an operating problem, given the cost and inconvenience.  *See* Electrolux Br. at 21.  Moreover, Dr. Boelhouwer opines, inconsistently, that Electrolux should have implemented a feedback system involving an "indicator light" or a "word message" on the dryer control panel that would alert the user that the dryer required servicing.  *See id*. at 23.  The cost of compliance is the same whether the user is warned through Electrolux's written warnings or through Dr. Boelhouwer's theoretical feedback system.  The anecdotal CPSC survey, which reaches a much weaker conclusion than Dr. Boelhouwer, is insufficient to elevate his inconsistent, say-so opinions to the level of scientific knowledge derived from the scientific method, as required under *Daubert*. *Daubert I*, 509 U.S. at 590.

      Plaintiffs' citation to *Burks v. Abbott Labs.*, 917 F. Supp. 2d 902 (D. Minn. 2013), *see* Opp'n at 25-26, does nothing to advance their argument.  The expert in *Burks* opined that a warning that infant formula posed an infection risk to premature infants was inadequate to warn that the risk also applied to healthy, full-term infants.  *Id*. at 909.  This straightforward opinion that "premature" means something different than "healthy, full-term" to the average purchaser of infant formula has nothing in common with Dr. Boelhouwer's opinions that consumers are unlikely ever to comply with an express admonition from the manufacturer to regularly service their major appliances.[8]  Before Dr. Boelhouwer may offer such an opinion to a jury, Plaintiffs must establish that it is based on more than Dr. Boelhouwer's "subjective belief or unsupported

---

[8] *Michaels v. Mr. Heater, Inc.*, 411 F. Supp. 2d 992 (W.D. Wis. 2006), is similarly distinguishable.  Defendant there challenged a human factors expert with 35 years' experience, who was a professor at several universities and had published several relevant books and over 100 papers.  *Id*. at 998.  His testimony was limited to whether the manufacturer's decision to affix a warning tag to a replaceable part complied with industry standards requiring that the tag be "permanently affixed" to the product.  *Id*. at 999.

speculation." *Daubert I*, 509 U.S. at 590. Plaintiffs cannot do so because Dr. Boelhouwer's admissions establish that the "background, training, and experience" on which he purports to rely do not encompass any meaningful evaluation of consumer habits in this area.

Plaintiffs' response to Electrolux's arguments regarding Dr. Boelhouwer's proposed "feedback system" is similarly inadequate. Dr. Boelhouwer is not qualified to offer his feedback system opinions, which would not meet the standard for reliability even if he were. Dr. Boelhouwer could point to no relevant training, experience, or research that would qualify him to opine that his theoretical system would be any more effective than the warnings already provided, admitting that he has not even attempted to conduct an analysis of whether such a system has been used—and with what success—by other manufacturers. *See* Electrolux Br. at 23-24. And while Dr. Boelhouwer asserts that his ill-defined feedback system would be more effective than the written warnings already accompanying Electrolux's dryers, he has not even described what the "word message" that would be displayed to the user would be. Plaintiffs cannot plausibly assert that this opinion, which is nothing more than a bare theoretical outline of a proposed alternative, was "derived by the scientific method." *Daubert I*, 509 U.S. at 590. It therefore does not "qualify as 'scientific knowledge'" and is inadmissible. *Id*.

Plaintiffs' authority *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235 (10th Cir. 2000) is inapposite. Plaintiffs cite this decision for the proposition that a human factors expert need not even have any first-hand experience with the machine on which he is opining for his testimony to be admissible. *Id*. at 1243-44. In *Smith*, however, "[t]he bulk of the testimony by [plaintiff's experts] focused on the procedures [defendant] followed in developing and marketing the [machine at issue], an area into which firsthand observation of the machine would shed little light." *Id*. at 1244. Here, in contrast, actual knowledge of the use and effectiveness of warning indicator lights and control-panel messages in lieu of the already-available written warnings are required to raise Dr. Boelhouwer's opinion from the level of rank speculation to something akin to scientific knowledge derived from the scientific method. Dr. Boelhouwer's "background, training, and experience"—which do not encompass an evaluation of the warnings of peer

products, an analysis of whether other manufacturers of ***any*** appliance have successfully implemented a system like the one he proposes, or even the ability to name another appliance that incorporates a warning light system, *see* Electrolux Br. at 23-25—are insufficient support to render his opinions admissible under Rule 702.

## III. CONCLUSION

For the foregoing reasons, Electrolux respectfully requests that the Court grant its motion to exclude the testimony of Plaintiffs' experts W. Joseph Fallows, Michael R. Stoddard, Jr., and Eric J. Boelhouwer at trial.

This 21st day of May, 2014.

TUCKER ELLIS LLP

By:

*/s/ Joseph J. Morford*

Joseph M. Fasi II, SBN 1006655
Joseph_Fasi@gshllp.com
Gonzalez Saggio & Harlan, LLP
111 E. Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: (414) 277-8500
Facsimile: (414) 277-8521

Robert H. Shulman (*pro hac vice*)
rshulman@manatt.com
David B. Killalea (*pro hac vice*)
dkillalea@manatt.com
Manatt, Phelps & Phillips, LLP
700 12th Street N.W., Suite 1100
Washington, D.C. 20005
Telephone: (202) 585-6500
Facsimile: (202) 585-6600

Joseph J. Morford (*pro hac vice* pending)
joseph.morford@tuckerellis.com
John Patterson (*pro hac vice*)
john.patterson@tuckerellis.com
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone: (216) 592-5000
Facsimile: (216) 592-5009

Rebecca M. Biernat (*pro hac vice*)
rebecca.biernat@tuckerellis.com
Traci L. Shafroth (*pro hac vice* pending)
traci.shafroth@tuckerellis.com
Tucker Ellis LLP
One Market Plaza
Steuart Tower, Suite 700
San Francisco, CA 94105
Telephone: (415) 617-2400
Facsimile: (415) 617-2409

*Attorneys for Electrolux Home Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2014, a copy of the foregoing REPLY IN SUPPORT OF DEFENDANT ELECTROLUX HOME PRODUCTS, INC.'S MOTION TO PRECLUDE TESTIMONY OF W. JOSEPH FALLOWS, MICHAEL R. STODDARD, JR., AND DR. ERIC J. BOELHOUWER were filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Traci L. Shafroth*
Traci L. Shafroth
traci.shafroth@tuckerellis.com
Tucker Ellis LLP
One Market Plaza
Steuart Tower, Suite 700
San Francisco, CA 94105
Telephone: (415) 617-2400
Facsimile: (415) 617-2409

*Attorneys for Electrolux Home Products, Inc.*