IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, et al., | Case No.: 3:11-cv-00678 (SLC) |
| Plaintiffs, | |
| v. | |
| ELECTROLUX HOME PRODUCTS, INC., | |
| Defendant. | |

---

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF OPINION AND ORDER ON DEFENDANT'S MOTION TO PRECLUDE EXPERT TESTIMONY OF MICHAEL R. STODDARD, JR.**

---

Plaintiffs American Family Mutual Insurance Company, *et al.*, hereby move for reconsideration of that portion of this Court's Order and Opinion issued June 26, 2014 (ECF 139, the "Order"), granting in part Defendant's Motion to Preclude Expert Testimony of Michael R. Stoddard, Jr.[1] The portion of the Order which precludes part of Mr. Stoddard's testimony (Order at 10-12) fails to take into consideration all of the data and evidence in this case and, thus, is erroneous and contrary to law. For those reasons, Plaintiffs respectfully request reconsideration of that narrow portion of the Order.

## BACKGROUND

Electrolux filed its challenge to the expert testimony of Michael R. Stoddard, Jr. on April 7, 2014 (the "Motion") (ECF 127). The parties briefed the matter (see ECF 135 ("Opp. Brief") & ECF 137 ("Reply Brief")), and submitted certain materials for the Court's consideration. The

---

[1] Defendant's Motion to Preclude challenged three different experts disclosed by Plaintiffs; this filing concerns only the challenge to Mr. Stoddard, and only that portion of the Order which precluded Mr. Stoddard's testimony on an "alternative warning system." (See Opinion at 11-12).

Court did not hold oral arguments or an evidentiary hearing. Moreover, the complete set of data upon which Mr. Stoddard relied in this case was not submitted to the Court, due to its sheer volume.[2] The Court issued its Order on June 26, 2014, denying Defendant's Motion almost entirely, but granting one aspect of the Motion with respect to Mr. Stoddard (ECF 139).

Plaintiffs have no objection to the overwhelming majority of the Order, objecting only to that portion of the Order stating, "I am not persuaded that Mr. Stoddard's testimony regarding an alternative warning system is reliable" (Order at 12), and the precursor statements leading to that ruling (Order at 10-11). Plaintiffs maintain that the Court was unable to consider key portions of Mr. Stoddard's expert report and appendices which pertain directly to the issues in question, and failed to take into consideration applicable law on the subject of alternative designs. Accordingly, Plaintiffs seek a limited reconsideration by the Court.

## APPLICABLE LEGAL STANDARDS

**A.      The Standard of Review.**

"District courts have inherent power to reconsider orders issued before the entry of final judgment." Schindler v. Marshfield Clinic, 05-C-705-C, 2007 WL 5493520 (W.D. Wis. Mar. 12, 2007) (citations omitted).[3] While such motions should not be used as a vehicle for re-litigating issues, a motion for reconsideration may be granted if the moving party can point to controlling decisions or data the court overlooked. See Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998); Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). As explained

---

[2] Due to the sheer volume of the materials upon which Mr. Stoddard relied (a terabyte of data, or more than 100,000 pages of documents), the entirety of Mr. Stoddard's work-product was not provided to the Court for review. Had oral arguments or an evidentiary hearing been conducted, then those materials would have been brought to the Court for consideration. Since that did not occur, Plaintiffs use this Motion for Reconsideration to demonstrate to the Court that the data which the Court believes is lacking in Mr. Stoddard's analysis is not, in fact, lacking at all.

[3] Since the parties have consented to the use of a magistrate in this case for all purposes, objections brought under 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a) are inappropriate, and the present Motion for Reconsideration is the most appropriate vehicle through which to raise these issues.

by the United States Supreme Court, a "district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." Luce v. United States, 469 U.S. 38, 41-42 (1984) (stating that evidentiary rulings are "subject to change when the case unfolds, particularly if . . . actual testimony differs from what was contained in the defendant's proffer.").

In the present case, the Court reached its decision based on the briefing of the parties and the parties' limited submissions, but a great deal more data supports Mr. Stoddard's opinions. Plaintiffs seek reconsideration of a limited portion of the Court's decision, to allow the Court to consider data disclosed by Plaintiffs, and allow an evidentiary hearing if necessary whereat Mr. Stoddard can clarify any misunderstandings the Court may have regarding the bases for his opinions.

B. The Gatekeeping Standards.

The standards by which courts are to carry out their gatekeeping obligations with respect to expert testimony are set forth in detail in the Opp. Brief. See Opp. Brief at 2-3. Expert testimony should be admitted unless "speculative or conjectural or if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith.'" Boucher v. United States Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). Most importantly, "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000). As the Seventh Circuit has noted, "the jury must still be allowed to play its essential role as the arbiter of the weight and credibility of expert testimony." Stollings v. Ryobi Techs., Inc., 725 F.3d 753, 765 (7th Cir. 2013). In the present case, the Court was unable to consider the entirety of Mr. Stoddard's materials and submissions and, if it considers the entirety, the Court has an ample basis to determine that Mr. Stoddard's

3

opinions on "alternative warnings designs" meet the minimal threshold outlined by F.R.E. 702 and *Daubert*.

## LEGAL ANALYSIS

### A. Mr. Stoddard has pointed to other dryers that contain warning systems similar to his proposed warning systems.

If Mr. Stoddard's opinions and the data upon which those opinions are based are considered in full, it is abundantly clear that he has a reliable basis upon which to opine about "alternative warning systems." As a preliminary matter, that portion of the Order which is specifically-related to this motion is as follows:

> Stoddard has opined that Electrolux could have addressed the alleged warning inadequacies by incorporating into the dryer design service reminder lights, restricted airflow notifications and a "lockout feature to shut down the dryer if the warning light was ignored by the user with conditions of poor airflow, which could only be reset by a trained servicer." Electrolux objects to this testimony on the ground that it is neither relevant nor reliable, arguing that Stoddard's proposed designs are theoretical only and not supported with any data, testing or analysis to show their efficacy or feasibility in general, much less that they would have made any difference in any of the instant cases. This criticism is well-founded.

(Order at 10-11). The Court continues by claiming Stoddard "has not pointed to any other dryers that contain similar warning systems and he has not cited any other data to support the reliability of his opinion."[4] Id. The Court's assessment is inaccurate on these points.

First, specifically at Pages 102 through 108 of Mr. Stoddard's report, he offers evidence to support his opinion than an alternative warning system could have been utilized in the subject dryer design. See Exhibit A, at 102-108. Mr. Stoddard specifically identified competitors to

---

[4] The Court also states, "Plaintiffs have not developed any meaningful response to this objection to Stoddard's testimony." Id. Plaintiffs would simply point out that since Defendants grouped three separate challenges into one document and seemingly challenged the entirety of each expert's testimony, Plaintiffs responded generally to Electrolux's challenges, but could simply not respond in significant detail to every point made by Defendants. Plaintiffs fully expected to be allowed the opportunity to respond to any of the Court's more specific concerns at oral arguments or at an evidentiary hearing. Since the Court did not have **all** the data upon which Mr. Stoddard relied for this portion of his opinion, Plaintiffs take this opportunity to present it, as specifically allowed by law. Luce v. United States, 469 U.S. 38, 41-42 (1984).

Electrolux that already utilize the type of warning system he has proposed should have been incorporated into the Electrolux design, as follows:

> [o]ther dryer manufacturers incorporate a similar type of safety in their residential clothes dryers. Some are based on a pressure sensing system that monitors the backpressure on the exhaust system exiting the dryer. Whirlpool's Cabrio line of residential clothes dryers incorporates "airflow detection capabilities" which monitors the exhaust system and provides an error code on the dryer control console to actively warn users of a restricted exhaust condition. The Whirlpool Dryer Venting Specifications (Document/Part No. W10100920B) describe the Error Code generated by the dryer and the steps required by the user to rectify the potential causes . . . .

Id. Mr. Stoddard then cites to additional Whirlpool features, as well as existing Electrolux features in other Electrolux models, which exemplify the very "alternative warnings systems" about which he opines. Id.

The existence of alternative designs already on the market containing Mr. Stoddard's proposed design changes demonstrates the inherent reliability of Mr. Stoddard's opinions: "[b]y showing that the alternative designs are present in other manufacturers' [products] which are currently on the market, plaintiffs could show that those alternative designs are practical and feasible; or at least it is possible that a jury could draw that conclusion." Hein v. Deere & Co., 2013 WL 5229981, *2 (N.D. Iowa 2013). Moreover, the fact these features already exist in marketed products demonstrates that the "testability" component of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), has been satisfied.

Second, the availability of warning systems for residential dryers is so well-known that the issue has appeared in Consumer Reports. See Exhibit B, "Dryers," (Consumer Reports, July 2010)(referenced in Mr. Stoddard's Report at Appendix 1 (Exhibit I[5])).[6] The article from

---

[5] The purpose of including Mr. Stoddard's Appendix to his Report is to demonstrate that he did, in fact, rely upon this data in support of his opinions on "alternative warnings systems." Plaintiffs have highlighted the lines in the Appendix which correlate with the Exhibits cited herein; all of the materials cited in the Appendix have previously been provided to Defendant.

Consumer Reports specifically details a "vent-blockage indicator" as a component part of an LG dryer and a Kenmore dryer. The article references that, in Consumer Reports' test, the vent-blockage indicator "lit up," which references a light indicator as proposed by Mr. Stoddard. Id. While the article details certain problems with the indicators, that is a *consumer preference* concern, not a point which affects whether Mr. Stoddard's testimony on the appropriateness of such indicators is based on sufficient facts and data and a reliable methodology, as required by Federal Rule of Evidence 702.

Third, a "Use and Care Guide" issued by Whirlpool Home Appliances in 1994 references the very type of alternative warning system of which the Court believes there is inadequate evidence. The Guide specifically states the following:

> **Lint signal**
> Restricted airflow reduces drying efficiency.
> The signal (a whistle tone) lets you know if the airflow is restricted.
> • Turn off the dryer and clean the lint screen.

See Exhibit C, Whirlpool Use and Care Guide at P. 15 (referenced in Mr. Stoddard's Report at Appendix 1). This is another example of an "alternative warning system" providing a restricted airflow notification, which the Court did not consider in its evaluation of Mr. Stoddard's testimony.

Fourth, as noted above, the Whirlpool "Cabrio" dryer also provides the very same type of alternative warning system. See Exhibit D, Whirlpool Cabrio Use & Care Guide (referenced in Mr. Stoddard's Report at Appendix 1). The Cabrio design incorporates a "diagnostic code"

---

[6] Notably, this Consumer Reports article has been relied upon by Defendant's experts in support of their opinions.

which appears in the event of a low airflow condition, and the Guide specifically advises the user to remove lint from the exterior vent if the code appears:

> ■ **"AF" (low airflow condition):**
> The dryer will continue to run when this diagnostic code is present. Press any key to clear the code from the display and return to the estimated time remaining.
>
> **Try the following:**
> Clean lint screen.
>
> Check to see if the vent run from the dryer to the wall is crushed or kinked.
>
> Confirm the vent run from the dryer to the wall is free of lint and debris.
>
> Confirm the exterior vent exhaust hood is free of lint and debris.
>
> Confirm your vent system falls withing the recommended run length and number of elbows for the type of vent you are using. Refer to "Plan Vent System" in the Installation Instructions for details.
>
> Select a Timed Dry heated cycle, and restart the dryer.
>
> If the message persists, have your entire home venting run cleaned.

Id. at P. 12.

Fifth, Samsung's dryer design provides the very type of alternative warning system of which the Court believes there is inadequate evidence. See Exhibit E, Samsung User Manual (referenced in Mr. Stoddard's Report at Appendix 1). The Samsung manual references various "information codes" which display on the product, including a code which indicates that the dryer vent is restricted. Id. at P. 31.

Sixth, an after-market product known as a "Dryer Vent Alarm" provides the very type of alternative warning system of which the Court believes there is inadequate evidence. See Exhibit F, DrySafer Dryer Vent Alarm Installation and Owners' Manual (referenced in Mr. Stoddard's Report at Appendix 1). The Dryer Vent Alarm "beeps" if the vent is clogged, or if there is some other restriction on airflow. Id.

Seventh, another Whirlpool model, the "Duet," provides the very type of alternative warning system of which the Court believes there is inadequate evidence. See Exhibit G, Whirlpool Use & Care Guide for W10529641B (referenced in Mr. Stoddard's Report at Appendix 1). The "Duet" comes equipped with an actual light instructing the user to "check vent."

> **Check Vent**
>
> This indicator will show the status of airflow through the dryer for the dryer's life. During the sensing phase at the beginning of the cycle, the Check Vent light will come on if a blocked vent or low airflow issue is detected. This light will stay on for the entire cycle, but will turn off at the end of the cycle. This feature is available during Automatic and Steam cycles only. For more information on maintaining good airflow, see "Check Your Vent System for Good Airflow."
>
> **NOTE:** If there are other error issues during a cycle, the Check Vent indicator will not light up. See "Troubleshooting" section.

Id. at 12. All of these examples provide ample evidence and data for the Court to conclude that Mr. Stoddard's testimony on "alternative warning systems" is reliable and based on sufficient facts and data, as required by F.R.E. 702.

**B.  Testimony about alternative warning systems was previously deemed reliable and admissible by this Court.**

Furthermore, and perhaps most importantly, this Court has *already allowed* the very type of testimony Mr. Stoddard intends to offer in this case in another case involving the same dryer design at issue here. At trial in *The Standard Fire Ins. Co. v. Electrolux Home Products, Inc.*, Case no. 08-CV-540-SLC in 2010, this Court accepted testimony from David Beauregard ("Beauregard") on the very type of "alternative warning systems" which Mr. Stoddard proposes. See Exhibit H, Transcript of Trial Testimony, at 55-59. Mr. Beauregard offered testimony specifically regarding a "shut down" device which he designed and incorporated into the

8

Electrolux design. Id. at 55-57. Mr. Stoddard considered and relied upon Mr. Beauregard's work and his testing of this "shut down" device in forming his opinions. See Exhibit I, Appendix; see also Exhibit J (photographs of Beauregard "shut down" device from Mr. Stoddard's appended materials). It is axiomatic that if this Court deemed testimony on that "shut down" device for Electrolux dryers reliable for purposes of the *Standard Fire* case, then such testimony is no less reliable in this case.

Also, at the aforementioned trial, Mr. Beauregard offered more testimony about alternative warning systems:

> [a]nd certainly one form of warning I talked about before, it could be an audible signal, a beeping or flashing light, and that would be something that could be very easily adapted to what I just spoke of. Instead of having the dryer shut down when you got some kind of an airflow restriction, you could make it so it made a chiming noise or a little flashing light, whatever, you know. If you thought that shutting down was going to inconvenience the customer too much, then just make a warning light or a warning tone.

Id. at 59. These types of alternative warnings are the very types of alternative warnings about which Mr. Stoddard has opined and about which the above-cited documentation references. Since a court must exclude unreliable expert testimony from being presented to a jury, see Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000), and since this very Court allowed this testimony to be presented to a jury, the Court considered this testimony from Mr. Beauregard reliable. And since Mr. Stoddard's testimony is on the exact same subject matter and even has documentary support (which Mr. Beauregard did not offer), disallowing Mr. Stoddard's testimony would be inconsistent and fundamentally unfair to Plaintiffs, as Plaintiffs are entitled to rely upon positions taken previously by this Court.

As to legal conclusions reached by the Court, the case relied upon for its limited preclusion of Mr. Stoddard's opinions, Cummins v. Lyle Industries, 93 F.3d 362 (7th Cir. 1996),

9

actually supports Plaintiffs' position. The Cummins court noted that reliability of an expert's opinions can be established through the review of "experimental, statistical, or other scientific data generated by others in the field." Cummins, 93 F.3d 362, 369 (7th Cir. 1996). The Cummins court only sought *some* indicia of an expert's proposed designs, and there is no better "scientific data" for Mr. Stoddard to consider than the actual end-products produced by Defendant's competitors. See also Kinser v. Gehl Co., 184 F.3d 1259 (10th Cir. 1999) (noting that the demonstration of alternative design feasibly could be supported by citation to other products on the market.).

    Finally, while not specifically addressed in the Seventh Circuit, other circuits have endorsed the idea that evidentiary hearings are crucial in adjudicating the admissibility of expert testimony. The Second Circuit considers evidentiary hearings on Daubert challenges "highly desirable" because they allow parties to present expert evidence and conduct cross-examination of the proposed expert. Borawick v. Shay, 68 F.3d 597, 608 (2d Cir. 1995). The Third Circuit has emphasized the importance of allowing a party defending the admission of expert witness testimony to "be given an adequate chance to do so . . . the most efficient procedure that the district court can use . . . is an *in limine* hearing." In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717 (3d Cir. 1994) (wherein the Third Circuit reversed summary judgment in favor of defendants because the district court, in excluding expert evidence, failed to "provide . . . the plaintiffs with sufficient process for defending their evidentiary submissions."). While a Daubert hearing is not required, to the extent the Court has any concerns about the reliability of Mr. Stoddard's testimony on "alternative warning systems," Plaintiffs request that this Court conduct an evidentiary hearing on this limited area to clarify any points which continue to concern the Court.

## CONCLUSION

In deeming a portion of Mr. Stoddard's testimony unreliable, the Court did not consider evidence that satisfies the very concern upon which the Court based its Order. Moreover, this Court has previously deemed the very type of testimony Mr. Stoddard offers reliable, and has allowed that testimony to be presented to a jury. To hold otherwise in this case would lead to inconsistent rulings from the same Court. Finally, to the extent the Court has further concerns regarding the reliability of Mr. Stoddard's testimony, Plaintiffs request an evidentiary hearing that would resolve any doubt the Court may have as to the bases for Mr. Stoddard's opinions on "alternative warning systems." Accordingly, Plaintiffs respectfully request that this Court reconsider a narrow portion of its Order of June 26, 2014, and enter an order finding that Mr. Stoddard's "alternative warnings system" testimony is reliable and admissible at trial.

Dated: July 3, 2014

**YOST & BAILL, LLP**
*Counsel for Plaintiffs*

By: s/Teirney S. Christenson
Teirney S. Christenson, SBN 1056438
YOST & BAILL, LLP
745 Mayfair Bank Tower
2300 North Mayfair Road
Milwaukee, WI  53226
T: (414) 259-0600
F: (414) 259-0610
tchristenson@yostbaill.com

-and-

Daniel W. Boerigter
YOST & BAILL, LLP
2050 US Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402
T: (612) 338-6000
F: (612) 344-1689
dboerigter@yostbaill.com
*Admitted Pro Hac Vice*

-and-

Jeffrey C. Arnold
FISHER KANARIS, P.C.
200 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
T: (312) 879-1521
F: (312) 474-1410
jarnold@fisherkanaris.com
*Admitted Pro Hac Vice*